**IOWA STATE UNIVERSITY RESEARCH FOUNDATION, INC., an Iowa Corporation, Plaintiff,**

v.

**AMERICAN BROADCASTING COMPANIES, INC., a New York Corporation, and ABC Sports, Inc., a New York Corporation, Defendants.**

No. 75 Civ. 3353 (KTD).

United States District Court,
S. D. New York.

Aug. 9, 1979.

Coudert Brothers, New York City, for defendants by Michael J. Calvey, June A. Eichbaum, New York City.

Sprung, Felfe, Horn, Lynch & Kramer, New York City, for plaintiff by Leonard Horn, Arnold Sprung, Ira J. Schaefer, New York City.

LUMBARD, Circuit Judge: *

Plaintiff Iowa State University Research Foundation, Inc. ("Iowa State") brought this action for copyright infringement against defendants American Broadcasting Companies, Inc., and ABC Sports, Inc. (collectively "ABC"), alleging that ABC had infringed Iowa State's copyright in a student-produced film about Olympic wrestler Dan Gable. A two-day bench trial limited solely to the issue of ABC's liability took place on September 21 and September 22, 1978. This court, in findings of fact and conclusions of law filed December 15, 1978 and reported at 463 F.Supp. 902 (S.D.N.Y. 1978), held ABC liable for infringing Iowa State's copyright through two unauthorized showings of portions of Iowa State's film "Champion" on national television during ABC's 1972 Olympic games telecast.

On May 30, 1979 the parties presented evidence relevant to damages. Iowa State was also prepared to introduce evidence tending to show that ABC had infringed Iowa State's copyright on a third occasion by using Iowa State's film in one of ABC's telecasts of the "Superstars" program. Since ABC conceded this third infringement, however, Iowa State was not required to screen the offending portions of "Superstars".[1]

Iowa State's claim for damages is grounded in the old Copyright Act of 1909, 17 U.S.C. § 101(b), which was in force at the time of ABC's infringement but which has since been substantially revised.[2] Relying

* Sitting by designation.

1. ABC contends that Iowa State is not entitled to recover damages for this last infringement because the statute of limitations ran out before Iowa State actually made a claim with respect to that use. Paragraph seven of Iowa State's complaint, however, alleges that "[o]n one or more occasions, including the Olympic coverage, defendants included in the programs they produced and broadcast excerpts from the motion picture 'Champion'". The complaint clearly envisages other infringements besides those occurring during the Olympic coverage. Accordingly, the court reads the complaint as requesting damages for all infringing uses of "Champion", before and after the Olympics, including those uses Iowa State did not know about when the complaint was first filed.

2. Consequently, references in this opinion to 17 U.S.C. shall be to the old Copyright Act of 1909, which governs this action, and not to the new Copyright Act of 1976. The Copyright Act of 1909, with its "nearly impenetrable provisions for 'in lieu' damages", Robert Stigwood Group Ltd. v. O'Reilly, 530 F.2d 1096 (2d Cir. 1976), provided as follows:

"If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

* * * * * *

(b) . . . To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only, and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages and profits, such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated . . . in the case of the infringe-

on statutory provisions which have been aptly described by Judge Feinberg as "an ambiguous hodgepodge of improvisation", *Davis v. E. I. duPont de Nemours & Co.*, 249 F.Supp. 329, 331 (S.D.N.Y.1966), Iowa State has demanded damages totalling $55,000. To support this figure, Iowa State contends that ABC has committed four separate acts of infringement: (1) the initial copying of "Champion" in early August, 1972, for later use; (2) the broadcast of a seven-to-twelve second segment on August 25, 1972 as part of ABC's Olympic preview; (3) the broadcast of a two and one-half minute segment on August 27 during ABC's live Olympic coverage from Munich; and (4) the broadcast of an eight second segment in February, 1974 as part of ABC's "Superstars" program. Arguing that ABC's knowledge of Iowa State's copyright renders inoperative the $5,000 limitation on statutory "in lieu" damages, Iowa State seeks statutory damages of $10,000 for each infringement, with the exception of the third infringement, for which it demands "actual" damages of $25,000, for a total of $55,000.

Iowa State argues that its $25,000 "actual" damage claim for the third infringement finds support in a comparative cost analysis of the market value of "Champion", a value which Iowa State argues ABC completely converted to its own use. Iowa State relies on three comparisons in fixing this market value at $25,000. First, Professor Kraemer of Iowa State, who supervised preparation of "Champion", testified that the market value of the film was $30,000.

Second, ABC producer Brice Weisman testified that a $21,600 figure was quoted to ABC for use of a film of the 1936 Berlin Olympics. Iowa State argues that "Champion" is worth at least as much as the 1936 film. Third, although Weisman testified that he spent roughly $3,500 to produce a similar film on Dan Gable, Iowa State argues that inclusion of various overhead costs would bring the true cost of the Weisman film closer to $25,000.

ABC, by contrast, argues that an appropriate damage figure would be $3,500. To support this figure, ABC argues that its various uses of "Champion" amounted to one infringement, that Iowa State cannot prove any "actual" damages for that one infringement, that there was no notice of infringement of the type contemplated by the last sentence of § 101(b) quoted above, and that statutory damages with the $5,000 ceiling are therefore appropriate. In determining what damages are "just", ABC has relied upon a cost comparison similar to that conducted by Iowa State, but one which rests on different bases of comparison. First, while Professor Kraemer testified that the market value of "Champion" was $30,000, he also testified that the actual production costs were only $3,000. Since ABC's aggregate use of the twenty-eight minute film totalled only three minutes, ABC argues that $\frac{3}{28}$ of $3,000, or $321.43, provides one measure of the appropriate damages. Second, Weisman testified that his film on Gable cost only $3,500 to produce, exclusive of overhead costs. ABC argues that Weisman's film is worth at least

ment of an undramatized or nondramatic work by means of motion pictures, where the infringer shall show that he was not aware that he was infringing, and that such infringement could not have been reasonably foreseen, such damages shall not exceed the sum of $100; and in the case of an infringement of a copyrighted dramatic or dramatico-musical work by a maker of motion pictures and his agencies for distribution thereof to exhibitors, where such infringer shows that he was not aware that he was infringing a copyrighted work, and that such infringements could not reasonably have been foreseen, the entire sum of such damages recoverable by the copyright proprietor from such

infringing maker and his agencies for the distribution to exhibitors of such infringing motion picture shall not exceed the sum of $5,000 nor be less than $250, and such damages shall in no other case exceed the sum of $5,000 nor be less than the sum of $250, and shall not be regarded as a penalty. But the foregoing exceptions shall not deprive the copyright proprietor of any other remedy given him under this law, nor shall the limitation as to the amount of recovery apply to infringements occurring after the actual notice to a defendant, either by service of process in a suit or other written notice served upon him."

as much as "Champion". Third, ABC introduced evidence tending to show that the cost of renting high quality film footage for television ranged between $700 and $1,080 per minute in 1972. Even taking the high figure of $1,080 produces damages of only $3,240 for use of the three minutes of "Champion".

In *Robert Stigwood Group Ltd. v. O'Reilly,* 530 F.2d 1096, 1101 (2d Cir. 1976), *cert. denied,* 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976), the Court of Appeals summarized the general rule in this circuit for the calculation of damages under the Copyright Act of 1909 as follows:

> "There are three ways of getting damages for copyright infringement under § 101: 1) actual damages to the copyright proprietor; 2) profits which the infringer has made from such infringement; or 3) 'in lieu of actual damages and profits, such damages as to the court shall appear to be just . . . and such damages shall [not] exceed the sum of $5,000 nor be less than the sum of $250, and shall not be regarded as a penalty.' "

█ Iowa State has not requested damages based on ABC's profits, but has requested actual damages totalling $25,000 for broadcast of the two and one-half minute segment on August 27, 1972, and statutory "in lieu" damages for the other infringements. The court finds that Iowa State has failed to make a sufficient showing of actual damages and is therefore entitled to statutory damages only. The film was produced under faculty supervision, by students, as part of a course on filmmaking. Any value placed on the number of hours which the student team invested into the film would at best be speculative, as these students were not professionals, but were in a sense learning on the job. Although Professor Kraemer attempted to put a value on the film independent of production costs, there is no corroboration of Kraemer's estimate of a $30,000 market value by any impartial expert. Comparison with a classic German film of the 1936 Berlin Olympics, a film of little sporting but of great historical value, is of doubtful relevance

and lends no support to Kraemer's estimate. Finally, although the $3,500 cost of the Weisman film on Gable might set a floor beneath the value of "Champion", assuming that both films were of equal quality, Iowa State has not attempted to substantiate with any specificity the additional overhead costs to support any higher figure for purposes of comparison.

Nor has Iowa State shown with reasonable certainty any diminution in the market value of "Champion" allegedly caused by ABC's use of the film on national television, and it certainly has not shown that ABC's use of "Champion" usurped the entire market value of the film, leaving it commercially worthless. Indeed, the evidence available suggests that the market value of "Champion" increased after ABC's offending telecasts, although it is not clear whether the increased demand for "Champion" resulted from ABC's use of the film, as ABC contends, or, as Iowa State contends, from the attention Gable attracted by his Olympic performance. On this record, the court cannot award "actual" damages.

Since Iowa State has failed to show actual damages based on a claimed decrease in the market-value of "Champion", the court must award statutory damages for each infringement. *See Robert Stigwood Group, supra,* 530 F.2d 1096, 1101 n. 11 (". . . where profits are not actually ascertained, or where damages are not proved, 'in lieu' statutory minimum damages *must* be awarded") (emphasis in original); *Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc.,* 367 F.2d 236, 240 (9th Cir. 1966) (". . . it is important to emphasize that the judicial discretion to be employed in choosing between proven profits and damages on the one hand and the statutory limits on the other only comes into play when profits *and* damages have actually been proved, and unless they have, the court *must* apply the statutory standard.") (emphasis in original). *See also* 2 Nimmer on Copyright § 154.11.

In determining the number of times a defendant has infringed upon protected work, common sense provides the surest

guide. In close cases, this circuit has also used the "time" test—which looks to the proximity in time of repeated infringements in deciding whether to treat them as multiple infringements or as one continuing infringement—and the "heterogeneity" test—which looks to differences between the advertisers, financial arrangements, locales, audiences, and other significant variables in determining whether the circumstances surrounding successive infringements are so similar that those infringements should be treated as one continuing infringement or so different that they should be treated as multiple infringements. *See Robert Stigwood Group Ltd.,* supra, 530 F.2d 1096, 1103. *See also Davis v. E. I. duPont, supra,* 249 F.Supp. 329, 333–43.

■ Upon this record, the court concludes that ABC has infringed Iowa State's copyright in "Champion" four times: once when the entire film was copied without permission in early August, 1972; once when a seven-to-twelve second segment of the film was broadcast as part of the Olympic previews on August 24, 1972; once when two and one-half minutes of the film were broadcast during the course of live Olympic coverage on August 27, 1972; and once after the Olympics when eight seconds of the film were broadcast as part of the "Superstars" program in February, 1974. Since at least two days and as much as nineteen months separate each of these infringements from one another, the time test alone mandates a finding of four separate infringements. Application of the heterogeneity test confirms that finding. Even the two infringing uses which occurred closest together in time were broadcast to different audiences during different parts of the day for different purposes. The August 24, 1972 use was a broadcast to the general television audience during "prime time" as part of a commercial promotion for the upcoming Olympic telecast. The August 27, 1972 use occurred as part of the regular Olympic coverage, and was not shown for a general television audience, but rather for one more specifically interested in wrestling.

■ The Copyright Act of 1909 sets a limit of $250—$5,000 on plaintiff's recovery for each infringement shown, except in the case of "infringements occurring after the actual notice to a defendant, either by service of process in a suit or other written notice served upon him." Iowa State argues that the existence of a copyright notice at the beginning of the film meets the statutory notice requirement, so that the $5,000 limitation may be exceeded. The notice called for by the statute, however, is service of process or other notice served upon the defendant. Were this requirement of written notice served on the defendant satisfied by the mere placing of a copyright notice on an infringed work, there would be no rule but the exception. Congress intended this provision to increase the penalty for willful infringements continued after requests to desist by the copyright owner. With respect to the first three infringements, such was not the case here.

None of the cases cited by Iowa State support its minimalist construction of the statutory notice requirement. In *Hiawatha Card Co. v. Colourpictures Publishers, Inc.,* 255 F.Supp. 1015 (E.D.Mich.1966), the court specifically found that ". . . Hiawatha, in a letter to Colourpictures, gave notice to Colourpictures that it was infringing Hiawatha's copyrights." Thus any discussion of the effect of the copyright notice on the $5,000 damage limitation was dicta. In fact, the court in *Hiawatha* drew attention to the copyright notice on the cards merely to underscore the willful nature of defendant's infringement. In *Mills Music Inc. v. Arizona,* 187 USPQ 22 (D.C.Arizona 1975), the court relied on an "uncontested" statement in the pretrial order in finding that the defendant had received the notice called for by the statute, but the court did not say what form that notice took. This court cannot agree that the court in *Mills* must have been referring to the copyright notice itself. Every other reported case follows the common sense meaning of the statute, which calls for written notice "served" on

the defendant. *See, e. g., Alouf v. Expansion Products, Inc.,* 417 F.2d 767 (2d Cir. 1969); *Advertisers Exchange v. Hinkey,* 199 F.2d 313, 315 (8th Cir. 1952), *cert. denied,* 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710 (1953). Accordingly, this court is bound by the $5,000 statutory maximum in awarding damages for each of the first three infringements.

Since Iowa State notified ABC of its claim to "Champion" by letter in August, 1973, the $5,000 maximum does not apply to the use of a portion of "Champion" in the February, 1974 broadcast of "Superstars". Even as to the "Superstars" infringement, however, the court is not required to exceed the $5,000 maximum. *See Alouf v. Expansion Products, Inc.,* 417 F.2d 767 (2d Cir. 1969) (award of damages beyond $5,000 statutory maximum is within district court's discretion where defendant has received statutory notice).

Upon review of all the evidence, the court awards $5,000 each for the second, third, and fourth infringements, and $250 for the first infringement, for a total of $15,250. Having refused to buy the film rights when they were first offered in 1972, ABC later took the film from one of its own employees with full knowledge of Iowa State's copyright, copied it without obtaining proper permission, used it several times, and then denied such use. Although Iowa State may not have suffered measurable damage as a result of ABC's infringing uses of "Champion", ABC should not for that reason be able to copy and broadcast the film without paying for it. At a minimum, according to ABC's own estimates, the value of the film to ABC was in excess of $3,500. But ABC cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law.

Iowa State also asks attorneys' fees of $27,000, as provided for by the Copyright Act, which allows attorneys' fees in the court's discretion. The court awards $17,500 to Iowa State as reasonable attorneys' fees. Having copied and broadcast the film, ABC responded to Iowa State's request for compensation first with denials and secondly with a hard-fought defensive law suit. Because of ABC's early denials of infringements which it later conceded, Iowa State incurred greatly increased litigation costs in vindicating its copyright.

Damages totalling $15,250 and attorneys' fees totalling $17,500 are awarded to Iowa State. A judgment in accordance with these findings may be settled on notice.

This memorandum constitutes the findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

SO ORDERED.