**BROADCAST MUSIC, INC.; Abcko Music, Inc.; Audigram Music, A Division of Audigram, Inc.; Unichappell Music, Inc.; and Dynatone Publishing Company, Plaintiffs,**

v.

**R BAR OF MANHATTAN, INC., d/b/a R Bar and Joseph Ruggiero, Individually, Defendants.**

No. 94 Civ. 6650(HB).

United States District Court, S.D. New York.

March 1, 1996.

Robert Boatti, New York City, for plaintiffs.

Joseph Ruggiero, New York City, Pro Se.

## *ORDER*

BAER, District Judge:

I referred this action to Magistrate Judge Sharon E. Grubin for a determination of appropriate injunctive relief, damages, interest, attorney's fees and costs after entry of a default judgment against defendants. Magistrate Judge Grubin issued an extensive Report and Recommendation dated February 6, 1996 recommending an award of $12,000 in statutory damages, attorney's fees and costs of $865, and prejudgment interest of $1,426.52 plus $1.98 per day from February 28, 1996 to the date of this Order, and the entry of a permanent injunction.

The Report advised the parties of their obligation to file timely objections under 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 6(a), 6(e), and 72(b). To date, no objections have been filed and I have found no clear error in the Report and Recommendation of Magistrate Judge Grubin.

Therefore, judgment is hereby entered in accordance with Magistrate Judge Grubin's recommendations.

**SO ORDERED.**

## *REPORT AND RECOMMENDATION TO THE HONORABLE HAROLD BAER, JR.*

GRUBIN, United States Magistrate Judge:

This case, brought pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, was referred to me for a determination of damages, interest, attorney's fees and costs after entry of a default judgment against R Bar of Manhattan, Inc. and Joseph Ruggiero, upon their failure to appear herein. Plaintiffs have submitted affidavits and documentary evidence on damages. The defendants did not make any submissions or contact the court at any time, despite notice and opportunity to do so. For the reasons in my proposed findings of fact and conclusions of law set forth below, I recommend entry of awards of $12,000 in

statutory damages, $1,426.52 in prejudgment interest and $865 in attorney's fees and costs, as well as a permanent injunction prohibiting defendants from unauthorized public performances of any copyrighted compositions licensed through plaintiff Broadcast Music, Inc. ("BMI").

■ A default judgment entered on well-pleaded allegations of a complaint establishes a defendant's liability. The allegations are to be accepted as true, except those relating to the amount of damages. *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir.1995); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69–70 (2d Cir.1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973).

The five plaintiffs are four music publishing companies, who are the copyright owners in eight musical compositions involved herein, and BMI, who has been granted the right to license the public performance rights in those compositions. (Complaint, ¶¶ 3, 4, 11.) Each of the eight compositions was publicly performed without permission from plaintiffs at R Bar, an establishment located at 273 Church Street that is owned and operated by defendants. (*Id.* ¶¶ 5, 13; Declaration of Ross Schneider, June 26, 1995, at 1–2.)

Upon learning that musical works licensed by BMI were being performed at R Bar, BMI wrote the defendants on November 25, 1992 of the need to obtain permission for performances of copyrighted music and sent them a license agreement to enter into. Having received no response, BMI sent another letter to defendants on December 23, 1992, urging execution of the license agreement. Again, there was no response. Thereafter, BMI personnel sent additional letters and agreements to defendants, each time receiving no response, telephoned the defendants on over 20 occasions and spoke to persons associated with the operation of the R Bar, and once visited the establishment and left a license agreement there. Although defendants failed to enter into an agreement at any time, they continued to

provide public performances of BMI-licensed works to their patrons. (Declaration of Lawrence E. Stevens, June 30, 1995, at 1–4.)

Thereafter, on September 21 and October 8, 1993 a BMI investigator was present at R Bar when the eight musical compositions in suit were performed. The compositions are: "Honky Tonk Woman" by Mick Jagger and Keith Richard, performed there by live entertainers on September 21, 1993; and "Cocaine" by J.J. Cale, "Wonderful Tonight" and "Next Time You See Her" by Eric Clapton, "Lay Down Sally" by Eric Clapton, Marcy Levy and George Terry, "Core" by Eric Clapton and Marcy Levy, "Peaches and Diesel" by Eric Clapton and Albhy Galuten, and "Papa's Got A Brand New Bag" by James Brown, performed there by means of recordings on October 8, 1993. (Complaint ¶ 13; Schneider Decl. at 1–2.) On October 15, 1993 BMI sent another letter to the defendants, advising them that suit for copyright infringement would ensue if they failed to execute a license agreement. Again, there was no response. This action was commenced on September 14, 1994.

■ These performances, made without a license or authorization from the copyright owners, constitute copyright infringement in the works. *See* 17 U.S.C. §§ 106(4), 501(a); *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963). Plaintiffs seek the following relief: (1) a permanent injunction against further infringing public performances of plaintiffs' copyrighted works; (2) statutory damages pursuant to 17 U.S.C. § 504(c) of $2,000 for each work infringed; (3) attorney's fees; and (4) other costs.

*Injunctive Relief*

■ The uncontroverted allegations in the complaint as supplemented by the testimony of BMI's investigator establish that defendants infringed plaintiffs' copyrights despite knowledge of those copyrights and have continued to have copyrighted music performed at R Bar without authorization. Plaintiffs

therefore should be granted a permanent injunction against unauthorized public performances of any copyrighted compositions licensed through BMI. 17 U.S.C. § 502(a). *See, e.g., Sailo. Music v. IML Corp.,* 867 F.Supp. 565, 569 (E.D.Mich.1994); *Jobete Music Co. v. Hampton,* 864 F.Supp. 7, 9 (S.D.Miss.1994); *Marvin Music Co. v. BHC Ltd. Partnership,* 830 F.Supp. 651, 655 (D.Mass.1993); *Pedrosillo Music, Inc. v. Radio Musical, Inc.,* 815 F.Supp. 511, 516 (D.P.R.1993).

*Statutory Damages*

■ The Copyright Act provides a copyright owner with the option of recovering (1) the copyright owner's actual damages and any additional profits of the infringer or (2) statutory damages, often referred to as "in lieu" damages, of between $500 and $20,000 per infringed work. 17 U.S.C. §§ 504(a), 504(c)(1). If the second option is chosen, the award of statutory damages may be increased up to a maximum of $100,000 if infringement was committed willfully. 17 U.S.C. § 504(c)(2). Plaintiffs here have elected to recover statutory damages.[1] "The broad discretionary power given courts to make such an award serves the dual purposes of the Copyright Act: to compensate copyright owners and to provide a deterrent for would-be infringers." *Lauratex Textile Corp. v. Allton Knitting Mills Inc.,* 519 F.Supp. 730, 733 (S.D.N.Y.1981). *See F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952) ("Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy [of discouraging wrongful conduct]."); *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250, 252 (2d Cir. 1992); *Schwartz–Liebman Textiles v. Last Exit Corp.,* 815 F.Supp. 106, 108 (S.D.N.Y. 1992); *Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F.Supp. 1522, 1545 (S.D.N.Y.1991). Relevant factors in determining the amount

---

1. Timely registration of each work with the Copyright Office as set forth in 17 U.S.C. § 412, a prerequisite to recovery of statutory damages or attorney's fees as provided in 17 U.S.C. §§ 504 and 505, has been established. (Complaint ¶¶ 10–11; *see also* Declaration of Gary F. Roth, July 10, 1995, at 1–2.)

of statutory damages include "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendants' conduct, and the infringers' state of mind." *Golden Torch Music Corp. v. Pier III Cafe, Inc.,* 684 F.Supp. 772, 774 (D.Conn. 1988). In similar cases involving unlicensed public performances of copyrighted music, courts have held that, in order to put such infringers "on notice that it costs less to obey the copyright laws than to violate them," *Rodgers v. Eighty Four Lumber Co.,* 623 F.Supp. 889, 892 (W.D.Pa.1985) (quotation omitted), a statutory damage award should significantly exceed the amount of unpaid license fees. *See, e.g., Broadcast Music, Inc. v. Star Amusements, Inc.,* 44 F.3d 485, 488 (7th Cir.1995) (upholding award of $140,000 in statutory damages where defendants avoided paying about $75,000 in Copyright Office registration fees); *Chi–Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1227, 1229–30 (7th Cir.1991) (upholding an award of $40,000 in statutory damages that was approximately three times what ASCAP license fees would have been had defendant been licensed by ASCAP); *Sailor Music v. IML Corp.,* 867 F.Supp. at 570 (inferring from other cases a "de facto treble rule" according to which statutory damages should be "three times the amount of a properly purchased license for each infringement"); *Major Bob Music v. Stubbs,* 851 F.Supp. 475, 480–81 (S.D.Ga.1994) (awarding $6,000 in statutory damages, *i.e.,* approximately three times what ASCAP license fees would have been); *Broadcast Music, Inc. v. Melody Fair Enterprises, Inc.,* Nos. CIV–89–70C, CIV–89–1223C, [1991] Copyright L.Dec. (CCH) ¶ 26,-688, 1990 U.S.Dist. Lexis 19322 at *3, 1990 WL 284743 at *4 (W.D.N.Y.1990) (awarding statutory damages of $42,000 and $70,000 where BMI license fees would have been $17,000); *Golden Torch Music Corp. v. Pier III Cafe, Inc.,* 684 F.Supp. at 774–75 (awarding statutory damages of $8,000 where ASCAP license fees would have been $1,490); *Rodgers v. Eighty Four Lumber Co.,* 623 F.Supp. at 892 (awarding statutory damages of $122,500 where ASCAP license fees would have been $77,805).

The evidence shows that from November 25, 1992 to October 15, 1993 BMI representatives wrote to defendants on ten occasions and spoke with persons associated with the establishment's operation over 20 times in an effort to tell defendants the requirements of the Copyright Act and to convince them to obtain a BMI license. On the basis of the record, it is clear that the defendants have acted willfully and "recklessly disregarded" their obligations under the Copyright Act. *Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F.Supp. at 1543. *See also Knitwaves Inc. v. Lollytogs Ltd. (Inc.),* 71 F.3d 996, 1010 (2d Cir.1995). The evidence submitted shows that defendants would have paid plaintiffs approximately $2,245 in total license fees had they been properly licensed for the period from November 1992 to date and that plaintiffs incurred investigative expenses of $417 to obtain the evidence of infringement. (Declaration of Lawrence E. Stevens, October 16, 1995, at 1–2.) Plaintiffs request $2,000 in statutory damages for each of the eight songs in suit, but do not explain why that specific figure would be appropriate in this case. In accordance with the authorities cited above, an award of statutory damages totaling $12,000 ($1,500 per song) is appropriate to compensate the copyright owners herein and to provide a deterrent for defendants and other would-be infringers. That sum is approximately five times what BMI license fees would have been plus plaintiffs' investigative expenses. That multiple of license fees is at the upper range of statutory damage awards in similar cases and is high enough to deter others from calculating that it would be cheaper to violate the copyright laws than to obtain an appropriate license agreement.

*Attorney's Fees and Costs*

■ The Copyright Act authorizes recovery of costs and "a reasonable attorney's fee to the prevailing party as part of the costs," to be determined in the court's discretion. 17 U.S.C. § 505. In exercising its equitable discretion, the court may consider, among other things, "frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.,* ——

U.S. ——, 114 S.Ct. 1023, 1033 n. 19, 127 L.Ed.2d 455 (1994). *See also Knitwaves Inc. v. Lollytogs Ltd. (Inc.),* 71 F.3d at 1011–12. Considerations of deterrence support an award of attorney's fees to the prevailing parties here, while none of the factors that might justify denying such an award, *e.g.,* the presence of complex or novel issues, a defendant's innocent state of mind, or prosecution of the case in bad faith, is present. *See Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F.Supp. at 1547.

■■■ Plaintiffs have submitted a declaration of BMI Associate Attorney Robert P. Boatti setting forth his work on this matter as well as BMI's costs. They request $1,050 for Mr. Boatti's work, based on an hourly rate of $150 and his estimate that he worked seven hours on this matter, and $340 for the costs of filing and service. Attorney's fees may be awarded for the work of in-house counsel, and an hourly rate based on an estimate of the fee charged by independent counsel for similar services can provide a reasonable basis for calculating such an award if other relevant criteria are satisfied. *See Perez v. Velez,* 629 F.Supp. 734, 737–38 (S.D.N.Y.1985); *Zacharias v. Shell Oil Co.,* 627 F.Supp. 31, 34 (E.D.N.Y.1984); *see also Browning v. Peyton,* 123 F.R.D. 75, 78 (S.D.N.Y.1988); *Brisbane v. Port Authority,* 550 F.Supp. 222, 224 (S.D.N.Y.1982). However, in the Second Circuit, motions for attorney's fees must be based on contemporaneous time records specifying relevant dates, time spent and work done. *See Cruz v. Local Union No. 3,* 34 F.3d 1148, 1160 (2d Cir.1994); *Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). Mr. Boatti, who has estimated the time he expended on the basis of his notes and the services he performed, admits that he did not keep contemporaneous time records. Such "hindsight review" is not an adequate substitute for contemporaneous time records. *Ward v. Brown,* 899 F.Supp. 123, 130 (W.D.N.Y. 1995). While the better weight of authority would dictate that plaintiffs should, there-fore, be awarded no attorney's fees, nevertheless, given the circumstances of this case, an award of some fees would be in order. *See, e.g., Ragin v. Harry Macklowe Real Estate Co.,* 870 F.Supp. 510, 521 (S.D.N.Y. 1994). My review of the work performed satisfies me that seven hours was a quite reasonable amount of time expended and $150 per hour is also quite reasonable for an attorney's time on such matters in New York. However, given the lack of contemporaneous time records, I recommend that the sum requested be reduced by 50%, and an award of $525 thus be made. Plaintiffs should hereby be advised, however, that their failure to keep and submit contemporaneous time records in any future suits in which they seek attorney's fees from this court will result in a denial of any fee award.

I therefore recommend that plaintiffs be awarded $865 in attorney's fees and costs.

*Prejudgment Interest*

■■■ Although an award of prejudgment interest in cases under the Copyright Act is discretionary with the court, *see, e.g., In Design v. Lauren Knitwear Corp.,* 782 F.Supp. 824, 837 (S.D.N.Y.1991), this is a case where it would be appropriate to further the goals of the Act. In recent copyright cases in the Second Circuit, prejudgment interest has been calculated on the basis of 52–week Treasury Bill rates, compounded annually. *See Softel, Inc. v. Dragon Medical & Scientific Communications Ltd.,* 891 F.Supp. 935, 944 (1995), *reconsideration granted in part on other grounds,* 1995 U.S.Dist. Lexis 15070, 1995 WL 606307 (S.D.N.Y.1995); *Merchant v. Lymon,* No. 87 Civ. 7199 (BDP) (NRB), 1995 U.S.Dist. Lexis 4676 at *27, 1995 WL 217508 at *7 (S.D.N.Y. 1995); *Bourne Co. v. Walt Disney Co.,* 1994 WL 263482, 31 U.S.P.Q.2d 1858, 1861 (S.D.N.Y.1994), *aff'd,* 68 F.3d 621 (2d Cir. 1995). Based on such rates, plaintiffs are entitled to $1,426.52.[2]

*Conclusion*

For the reasons set forth above, I recommend that plaintiffs be awarded a total of

---

**2.** Interest has been calculated from September 21, 1993, the date of the first infringement. To allow for the filing of objections before judgment may be entered pursuant to this Report, interest has been calculated to February 27, 1996. *See Torres v. CBS News,* 879 F.Supp. 309, 311–12 (S.D.N.Y.1995). For each day thereafter until

$14,291.52, which includes statutory damages of $12,000 (based on $1,500 for each infringed work), prejudgment interest of $1,426.52 and attorney's fees and costs of $865. Further, an injunction should be entered permanently restraining defendants, their officers, employees, and agents from publicly performing, or causing to be publicly performed, or aiding and abetting the public performance of the musical compositions licensed by BMI without lawful authorization.

Copies of this Report and Recommendation were mailed this date to:

Robert P. Boatti, Esq.
Broadcast Music, Inc.
320 West 57th Street
New York, New York 10019

Mr. Joseph Ruggiero
R Bar of Manhattan, Inc.
c/o R Bar
273 Church Street
New York, New York 10013

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Harold Baer, Jr., to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Baer. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

Dated: New York, New York
February 6, 1996

judgment is entered, $1.98 per day should accrue.