**JOE HAND PROMOTIONS, INC., as Broadcast Licensee of the September 19, 1999 DeLa Hoya/Trinidad Program, Plaintiff**

v.

**Michael J. SALINETTI, Individually and as an officer, director, shareholder and/or principal of Lee Men's Club, Inc. d/b/a Men's Club, and Lee Men's Club, Inc. d/b/a Men's Club, Defendants**

No. CIV A 00–30110–MAP.

United States District Court,
D. Massachusetts.

July 2, 2001.

---

Wayne D. Lonstein, Lonstein Law Office, P.C., Ellenville, NY, for Plaintiff.

## ORDER

PONSOR, District Judge.

Upon de novo review this Report and Recommendation is hereby adopted. The clerk will enter judgement for plaintiff for $17,785.00. So ordered.

## REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

### (Docket No. 8)

NEIMAN, United States Magistrate Judge.

This action has been referred to the court for a report and recommendation pursuant to 28 U.S.C. § 636(b) regarding a motion for the entry of a default judgment brought by Joe Hand Promotions, Inc., as Broadcast Licensee of the September 18, 1999 DeLaHoya/Trinidad Program ("Plaintiff"). Neither one of the two defendants—Michael J. Salinetti, individually and as an officer, director, shareholder and/or principal of Lee Men's Club, Inc. d/b/a Men's Club, ("Salinetti"), or Lee Men's Club itself, d/b/a Men's Club ("Men's Club") (together "Defendants")—has filed an appearance or otherwise responded to the complaint. An evidentiary hearing on Plaintiff's motion for default judgment was held on May 31, 2001.

### I. BACKGROUND

The complaint reveals the following facts. By contract, Plaintiff was granted the right to distribute the De LaHoya/Trinidad boxing program to be broadcast on September 18, 1999, via closed-circuit television and encrypted satellite signal. (Docket No. 1: Verified Complaint ¶ 14.) Pursuant to the contract, Plaintiff entered into subsequent agreements with various commercial establishments, allowing them to publicly exhibit the program to their patrons. (Id. ¶ 15.) Defendants, with full knowledge that the program was not to be exhibited by them, intercepted, received or de-scrambled the program and

unlawfully transmitted it for private financial gain. (*Id.* ¶ 17.)

The complaint has three counts. Count I alleges that Defendants wilfully violated 47 U.S.C. § 605(a) and seeks, as to each defendant, up to $110,000 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and (ii). Count II claims that Defendants violated 47 U.S.C. § 605(e)(4) and seeks, as to each defendant, up to $100,000 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Count III alleges that Defendants violated 47 U.S.C. § 553 and seeks $60,000 from each defendant. Plaintiff also claims that it is entitled to full costs, interest and reasonable attorney's fees, purportedly pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

On April 30, 2001, Plaintiff, having obtained the default, filed the instant motion for default judgment.[1] The motion refers to an "Affidavit" filed by Plaintiff's counsel (actually a memorandum of law) which, in turn, attaches an affidavit of Joe Hand, Jr., Plaintiff's President.

On May 17, 2001, the court ordered Plaintiff to appear at a hearing on the motion for default judgment, stating the following:

> Based on the well-pleaded allegations of the complaint, the court intends to recommend a finding of liability, including a finding that the defaulted defendants acted wilfully. Nevertheless, Plaintiff will be expected at the hearing to present evidence, including testimony if necessary, establishing the damages sought. *See* Fed.R.Civ.P. 55(b)(2); *Eisler v. Stritzler*, 535 F.2d 148, 153–54 (1st Cir. 1976); *Don King Productions/Kingvision v. Maldonado*, No. C–97–3530, 1998 WL 879683 (N.D.Cal. Dec. 11, 1998) (unpublished).

Thereafter, the court permitted Plaintiff's representative to appear telephonically at the hearing, although Plaintiff's counsel was to appear in person.

Plaintiff appeared through the person of Alan Gelb, Plaintiff's in-house counsel. His testimony revealed that, to legitimately broadcast the DeLaHoya/Trinidad program, Defendants would have had to pay Plaintiff $20 for each individual allowed by the Men's Club's maximum fire capacity. While that number is unknown, Plaintiff submitted an investigator's affidavit which reveals that approximately sixteen persons were at the restaurant on the night in question.

## II. DISCUSSION

Although the complaint lists three statutory counts, Plaintiff's memorandum only discusses violations of 47 U.S.C. § 605(a), the basis of Count I, and 47 U.S.C. § 605(e)(4), the basis of Count II. Plaintiff, through counsel, confirmed at the hearing that it was not seeking judgment with respect to Count III.

Section 605(a) prohibits the unauthorized "intercep[tion]," "publi[cation]" or "divulge[nce]" of a broadcast. In applicable part, 47 U.S.C. § 605(e)(3) provides that a party aggrieved by a violation or violations of section 605(a) "may recover an award of statutory damages for each violation ... in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). In addition, section 605(e)(3) states as follows:

> In any case which the court finds that the violation was committed wilfully and for purposes of direct or indirect com-

---

1. Plaintiff's motion is entitled a motion for entry of default. However, as Plaintiff is aware, a notice of default was entered on April 18, 2001. (Docket No. 6.) The papers Plaintiff filed in conjunction with the instant motion clearly indicate that Plaintiff is seeking a "default judgment." (See Docket Nos. 9, 10 and 11.)

mercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000.00 for each violation of subsection (a) of this section . . . .
47 U.S.C. § 605(e)(3)(C)(ii).

In applicable part, section 605(e)(4) provides that "[a]ny person who . . . modifies . . . any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming" may be subject to certain fines or imprisonment. 47 U.S.C. § 605(e)(4). For each violation of section 605(e)(4), "an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just." 47 U.S.C. § 605(e)(3)(i)(II). Finally, section 605(e)(3) "direct[s] the recovery of full costs, . . . including reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

In its supporting papers, Plaintiff indicates that it is seeking from Defendants a total "principal amount" of $110,000 plus interest, attorney's fees and costs. This is so despite the fact that the amount which Plaintiff could seek from *each* Defendant under section 605(a) would be $110,000 and $100,000 for each violation of section 605(e)(4). It appears, therefore, that Plaintiff is requesting a compromised amount.

In the court's opinion Plaintiff is wise to moderate its request. Still, the amounts requested are too high for at least two reasons. First, none of the cases relied upon by Plaintiff—many of which appear only marginally relevant and none of which are from the First Circuit—awards damages anywhere near that amount. *See, e.g., International Cablevision, Inc. v.*

*Sykes,* 997 F.2d 998, 1006 (2nd Cir.1993) (upholding $250 in statutory damages against businessman who sold cable descrambling device); *D.C. Comics, Inc. v. Mini Gift Shop,* 912 F.2d 29, 35 (2nd Cir. 1990) (granting $500 in damages against defendants who violated comic book copyright); *Time Warner Cable of New York City v. Olmo,* 977 F.Supp. 585 (E.D.N.Y. 1997) (ordering upon magistrate judge's recommendation $10,500 in damages for each of two wilful cable violations); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.,* 919 F.Supp. 656, 660 (S.D.N.Y.1996) (ordering statutory damages of $12,000 ($1,500 for each of eight songs) to compensate copyright owners); *Iowa State Univ. Research Found., Inc. v. ABC, Inc.,* 475 F.Supp. 78, 83 (S.D.N.Y.1979) (ordering $15,250 against defendant who improperly telecast copyrighted film), *aff'd,* 621 F.2d 57 (2nd Cir.1980); *Cablevision Systems Dev. Co. v. Cherrywood Pizza,* 133 Misc.2d 879, 508 N.Y.S.2d 382, 383 (N.Y.Sup.Ct. 1986) (corporation liable for $5,000 in damages for unauthorized cable connection). *But see Subscription Television of Greater Washington v. Kaufmann,* 606 F.Supp. 1540, 1548 (D.D.C.1985) (ordering damages of $110,824.50 against defendant who admitted to selling between thirty and forty illegal cable decoders per week). Second, in *Kingvision v. Maldonado,* a closely analogous case, the court only awarded statutory damages in the amount of $1,000 for what appears to be similar section 605 violations plus an additional $2,500 for wilfulness (in addition to $2,750 for a violation of 47 U.S.C. § 553), even though the plaintiff, like here, had requested a total of $150,000 as against three defaulted defendants. *See id.,* 1998 WL 879683.

As this court indicated in its May 17, 2001 order scheduling the hearing and based on the well-pleaded allegations in the complaint, the court intended to rec-

ommend a finding of liability, including a finding that Defendants acted wilfully. After all, that is the nature of the default. *See Olmo,* 977 F.Supp. at 589 (holding that "[t]he court may draw an inference of wilfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based in allegations of willful conduct"). Despite that indication and despite Plaintiff's efforts to notify Defendants, Defendants failed to appear at the hearing. Disregarding this litigation has been done at Defendants' peril.

As indicated, sixteen persons were at the Men's Club on the night in question. If sixteen was the maximum fire capacity, Defendants would have had to pay Plaintiff $320 ($20 per person) for the right to broadcast the DeLaHoya/Trinidad program.[2] Were the capacity at least twice that, which can fairly be assumed from the photographic evidence presented at the hearing, the cost would have been $640. Defendants, however, paid nothing. Rather, they broadcast the program at the Men's Club in violation of section 605(a). To do so, they had to have acted wilfully and for the purpose of an indirect, if not a direct, commercial advantage or financial gain. *See Time Warner Cable on New York City v. Googies Luncheonette, Inc.* 77 F.Supp.2d 485, 490–91 (S.D.N.Y.1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). They also appear to have "modifie[d]" a device in violation of section 605(e)(4).

Defendants cannot expect that, by ignoring the action, they will only be subject to the costs they would have paid had they acted legitimately. *See Iowa State Univ. Research Found.,* 475 F.Supp. at 83 (not-

ing that copyright infringer "cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law"). Moreover, Defendants should have expected that their statutory violations would result in an enhancement of damages as a future deterrent not only to them but to others. *See Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 852 (11th Cir.1990) (recognizing goal of deterrence and noting that court may consider party's attitude in determining statutory damage award); *Broadcast Music, Inc.,* 919 F.Supp. at 660 (similar); *Cablevision Systems New York City Corp. v. Faschitti,* 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996) (similar); *Rodgers v. Eighty Four Lumber Co.,* 623 F.Supp. 889, 892 (W.D.Pa.1985) (noting "common thread" in statutory damages cases that additional award for willfulness will put violators "on notice that it costs less to obey the … laws than to violate them").

Treating Defendants as one entity, the court believes that a $3,200 base statutory amount is appropriate for the section 605(a) violation, i.e., five times $640 (the broadcast cost to Defendants were the establishment's capacity thirty-two). In addition, although there is no evidence that Defendants' unauthorized use of the broadcast was particularly egregious, it had to have been committed wilfully, meriting at least $2,500 (of a potential $100,000) add-on. The court also believes that Defendants should be liable for $10,000, the statutory minimum with respect to their section 605(e)(4) violation. Finally, Plaintiff claims $1,500 as an attorney's fee and $585 in costs: $150 filing fee, $160 for service of process and $275 in investigative costs.

---

**2.** As in *Maldonado,* the court has not differentiated between the various defendants. *See*

*id.,* 1998 WL 879683, at *2.

The court finds these claims reasonable. The total of $17,785 is comparable to awards in similar geographic areas. *See, e.g., Olmo,* supra; *Joe Hand Promotions Inc. v. Abu Zahri,* 969 F.Supp. 849, 850 (N.D.N.Y.1997) ($12,175 in damages, costs and fees).

### III. CONCLUSION

For the reasons stated, the court recommends that Plaintiff be awarded $15,700 in damages, $1,500 in attorney's fees and $585 in costs, for a total award of $17,785.[3]

**3.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.