Barry M. BLACKMAN,

v.

HUSTLER MAGAZINE, INC.,
Appellant.

Barry M. BLACKMAN, Appellant,

v.

HUSTLER MAGAZINE, INC.

Nos. 85–5849, 85–5889.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 8, 1986.

Decided Aug. 29, 1986.

Norman Zafman, Beverly Hills, Cal., a member of the Bar of the Supreme Court of Cal., pro hac vice by special leave of Court, with whom Mark W. Foster, Washington, D.C., was on the brief, for appellant in No. 85–5849 and cross-appellee in No. 85–5889.

Bruce R. Genderson, with whom Paul Martin Wolff and Robert W. Hamilton, Washington, D.C., were on the brief, for appellee in No. 85–5849 and cross-appellant in No. 85–5889.

Before EDWARDS, BORK and KOZINSKI,* Circuit Judges.

KOZINSKI, Circuit Judge:

Encrypted in this story about nude photographs, shoddy business ethics, politics and unexpected riches lies a question about the calculation of damages for copyright infringement. Both facts and law make fascinating reading.

### FACTS

*Background*

Barry M. Blackman is a professional photographer. In 1972 he took a series of nude photographs of a relatively unknown model named Elizabeth Ray. Ray signed a release giving Blackman all rights to use, publish and copyright the photographs.

In 1976 Ray became something of a celebrity. Then a secretary to a United States congressman, Ray caused a stir by disclosing her intimacy with the legislator and her lack of typing skills. Her stock was on the rise and Blackman sought to cash in. Asking about $25,000, he put the Ray photographs up for sale to purveyors of smut and sensationalism coast to coast. Not to be left out of that competition was Larry Flynt, publisher of *Hustler* magazine and principal owner of appellant Hustler Magazine, Inc. ("Hustler").

Blackman sent his agent, William Tucker, to meet with Flynt in Las Vegas on June 16, 1976. While no agreement was reached, Flynt managed to wheedle the photographs (and negatives) from the hapless Tucker. The district court found, however, that Flynt did not have permission to use the photos and that any agreement as to their use was subject to Blackman's personal approval.

Blackman and Flynt never reached agreement. Instead, Blackman struck a deal with another magazine. He promptly informed Hustler and requested return of the prints and negatives.

Undeterred by arcane notions about the sanctity of property rights, Flynt's response was to publish the Ray photographs in the September 1976 issue of *Hustler.* In what the district court aptly described as a "brash adventure with destiny," Flynt twice more published the photographs "after [this] litigation had commenced." *Blackman v. Hustler Magazine, Inc.,* 620 F.Supp. 1501, 1514 (D.D.C.1984) ("Liab. Op."). The first republication, in late 1976, consisted of nine Ray photos in an issue humbly denominated "The Best of Hustler # 2" ("Best of"). The final publication, in July 1979, consisted of a single Ray photo in the gala Fifth Anniversary Issue. Flynt never secured Blackman's permission to use the photographs.

*Proceedings Below*

Blackman brought this suit for infringement of his copyright.[1] After a bench trial on liability, the district court found that Hustler had infringed Blackman's copyrights on all three occasions. The court was singularly unimpressed by Hustler's protestations of innocence, finding that the infringements had been "deliberate, intentional, malicious and wanton" and "in conscious disregard of Blackman's rights." Liab. Op., 620 F.Supp. at 1515.

The parties then proceeded to try damages. This task was made considerably more difficult by what the district court termed Hustler's "cavalier" loss of records critical to calculating the profits earned from the infringements. The loss allegedly occurred when Hustler moved its corporate headquarters from Columbus, Ohio, to Los Angeles, California.

---

\* Honorable Alex Kozinski, of the Court of Appeals for the Ninth Circuit, sitting by designation.

1. The Copyright Act of 1909, 17 U.S.C.A. App. § 1 *et seq.* (Supp.1985), applies to the two 1976 publications. The 1979 publication is governed by the Copyright Act of 1976. 17 U.S.C. § 101 *et seq.* (1982).

Under the Copyright Act of 1909,[2] applicable to the first two publications,[3] Blackman had the initial burden of proving the gross revenues Hustler had earned from the infringements. Blackman did this and those revenues are agreed to be some $2.4 million for the September 1976 issue and over $1.5 million for "Best of." [4] The burden then shifted to the defendant to prove deductible costs associated with the infringement. Because it had lost those records, Hustler declared itself unable to meet this burden directly. Instead, it introduced evidence that the profit margin in 1976 from the overall operations of Larry Flynt Publications, Inc. ("LFP"), its parent company, was 19%. Relying on the common sense notion that the magazine did not spring into existence cost-free, Hustler argued that its profit for the two relevant issues of the magazine was 19% of revenues.

The district court rejected this approach. It noted that the 19% profit figure bore little relationship to the profit margin applicable to the *Hustler* issues in question. The 19% figure was derived from the operation of all LFP enterprises, of which Hustler was but one. There was no reason to assume that Hustler was precisely as profitable as the average of all other LFP companies, which included such diverse enterprises as *Chic* magazine and Flynt Distributing Company. Nor was there any reason to believe that the two *Hustler* issues in question were exactly as profitable as all the others that year.

The district court also rejected the approach suggested by Blackman, who argued that because Hustler had not carried its burden of proving expenses, such expenses must be deemed equal to zero. Under Blackman's approach, profits would be equal to the proven revenues. The district court saw this as giving Blackman far too great a windfall. Damages Opinion 620 F.Supp. 792, 800 (1985) ("Damages Op.").

Having concluded that the proof presented did not permit a calculation of profits, the district court resorted to an alternative measure of damages provided for under the 1909 Act, namely statutory damages. Damages Op. at 16. Searching for an appropriate award, the trial court proceeded as follows: it multiplied Hustler's revenues for the two issues in question by the 19% profit figure it had previously rejected as unreliable. The court then determined how much of that profit was attributable to the infringing photographs. Based on the relative prominence of the Ray pictorials in satisfying the salacious appetites of *Hustler*'s readership, the court held that they generated 60% of the profits from the September 1976 issue and 35% of those from "Best of." On the basis of these calculations, the court awarded Blackman a total of $397,988 for the 1976 infringements.[5]

Both parties appeal. Hustler argues that the 60% and 35% figures selected by the district court are grossly out of proportion to the profits actually generated by

2. Damages under the Act are governed by former 17 U.S.C. § 101, which provides:

    If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

    . . . .

    (b) To pay the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only, and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages and profits, such damages as to the court shall appear to be just. . . .
    17 U.S.C.A. App. § 101.

3. There is no dispute on this appeal as to the damages suffered on account of the third infringement.

4. Blackman initially argued that a higher revenue figure was appropriate, based on some vague evidence that additional copies of the infringing issues were printed and distributed. This claim was wisely abandoned by counsel at oral argument before us.

5. This included $10,000 in actual damages, consisting of the bonus that another magazine had agreed to pay Blackman for an exclusive on the Ray photographs. In addition, the trial court awarded Blackman $33,881 for the Fifth Anniversary Issue under the 1976 Act, based on undisputed evidence of revenues and expenses. These two awards are not at issue on this appeal.

the photographs. Blackman cross-appeals; he contends that the district court erred in failing to award the profits proven at trial, which Blackman argues consist of Hustler's admitted revenues for the two 1976 issues. We consider these contentions in reverse order.

## DISCUSSION

### Blackman's Appeal

Blackman argues that, under the 1909 Copyright Act, once the holder of the copyright has met his burden in proving revenues from the infringing publication, the district court may not resort to statutory damages simply because the infringer is unable or unwilling to meet its burden of proving expenses. If expenses are not proven, Blackman argues, profits must be deemed to be equal to the proven revenues. Counterintuitive as this argument may seem, it is supported by the 1909 Copyright Act and the authorities interpreting it.

█ As previously noted, under the 1909 Act the copyright holder is entitled to the profits earned by the infringer as a result of the infringement.[6] 17 U.S.C.A. App. § 101(b). Profits are normally determined by subtracting expenses from revenues, with the burdens of proof allocated as discussed above. *See* pp. 1161–62, *supra.* The Act also provides an alternative method of calculating profits, known as statutory damages. 17 U.S.C.A. app. § 101(b). Statutory damages may be awarded when profits or ordinary damages are not proven, *see, e.g., F.W. Woolworth Co.*, 344 U.S. at 233, 73 S.Ct. at 225, or where the court considers them insufficient to compensate the plaintiff. *See, e.g., Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1178–79 n. 7 (9th Cir.1977); *Shapiro, Bernstein & Co.*

*v. Remington Records, Inc.*, 265 F.2d 263, 272–73 (2d Cir.1959).

█ This is not such a case. Plaintiff carried its burden in establishing the revenues earned by Hustler for the infringing issues of its magazine. There was then a failure of proof on Hustler's part in establishing expenses. Defendant attempted to meet its burden by proving an overall profit margin for its parent corporation. However, the district court, with good reason, rejected this feeble effort. As noted by the Ninth Circuit, where the infringer "does not assume this burden or if its attempt to do so is found unacceptable by the court, as was the case here, then 'the gross figure is left to stand as the profit factor.'" *Russell v. Price*, 612 F.2d 1123, 1131 (9th Cir. 1979) (quoting *F.W. Woolworth Co.*, 344 U.S. at 230, 73 S.Ct. at 224), *cert. denied sub nom. Drebin v. Russell*, 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980).

█ We understand—and sympathize with—the learned district judge's attempt to do justice and avoid what may be a windfall to Blackman.[7] However, we are not free to temper the scheme provided by Congress. For better or for worse, Congress allocated the burdens the parties must bear in proving profits under the 1909 Act. Because the plaintiff in a copyright case should be given "the benefit of every doubt," *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408, 60 S.Ct. 681, 688, 84 L.Ed. 825 (1940), the court may resort to statutory damages only where plaintiff is unable to prove revenues or where the court determines that statutory damages would more adequately compensate the copyright holder.

This case demonstrates some of the perils of straying from the statutory path. In the first place, the district court's generosi-

---

6. This measure of damages is not designed to compensate the copyright holder for his losses. As in this case, the infringer's profits may greatly exceed whatever actual damage the copyright holder may have suffered. He is nevertheless allowed to reap a windfall to further the Copyright Act's policy that infringers shall not profit from their wrongdoing. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952).

7. The district court noted that "it is clear that substantial costs were incurred and should be somehow accounted for—even those revenues conceded by defendant, not to mention those claimed by plaintiff, necessarily far exceed the profits generated by the two issues" and further that "this case involves very high sums of money, and a revenue-based award would impose on defendant far too severe a penalty for its inability to document costs." Damages Op. 620 F.Supp. at 800.

ty rewarded defendant for its mishandling of important records during the course of this litigation. The records it allegedly lost were, at the time of their loss, subject to a discovery request and defendant's commitment to produce them when needed.[8] To mislay key documents under such circumstances shows about as much respect for the litigation process as republication of the infringing materials after suit was commenced shows for the copyright laws.

Moreover, defendant's efforts at finding the lost records, or substitutes therefor, were feeble at best. During depositions, publisher Larry Flynt and Arnold Levitt, the Hustler employee responsible for the move of corporate headquarters, testified that they were never even asked about the missing documents. Nor did defendant do much to find substitute records, such as duplicate invoices from its suppliers.[9] It is difficult indeed to believe that, had it found it advantageous to do so, defendant could not have made a credible showing as to its actual expenses for the issues in question. Instead, defendant came up with what can charitably be described as a Rube Goldberg construct, the 19% profit margin that the district court cogently criticized and properly rejected. One can only infer that the real cost figures would have shown Hustler enjoying a much heftier profit margin.[10]

Finally, the district court's failure to follow the scheme prescribed by Congress led it to an irrational result. Having once rejected the 19% profit figure as "neither equitable nor based on fact," Damages Op., 620 F.Supp. at 800, the district court used the very same figure as the basis for its calculation of statutory damages. *Id.* at 800. Once it determined that the 19% figure was not based on fact, the court erred in using it to calculate statutory damages. If the figure means nothing, it has no legitimate role to play in the proceedings.

In sum, we see this as a simple case. Plaintiff carried its burden; defendant did not. Since the statutory scheme calls for subtracting defendant's proof from that of the plaintiff, and since defendant's proof was found to be zero, the figure proven by plaintiff winds up establishing the profits from the *Hustler* issues in question.

### Hustler's Appeal

■ Of course not all of the profit from the infringing issues of *Hustler* magazine are attributable to the Ray photographs. The burden of Hustler's appeal is that the district court erred in allocating as much as 60% of the profits from the September 1976 issue and 35% of the profits from the "Best of" issue. The Ray photographs, Hustler points out, comprise but six pages of the 136–page September 1976 issue and of the 128–page "Best of" issue. In addition, defendant argues, the Ray photographs made up only a small percentage of the total pictorials in each issue, presumably these pictorials being the mainstay of *Hustler*'s appeal.

■ We find no merit to this argument. The district court correctly noted that the

---

8. Before the trial on liability, Blackman served Hustler with interrogatories and document requests seeking financial information relevant to proof of profits for the infringing issues. Hustler refused to produce the information and Blackman filed a motion to compel. Responding to that motion, counsel for Hustler argued that discovery of such information should be postponed until liability was established and assured the court that the information would be produced at that time. However, after the judgment of liability, Hustler informed Blackman that the profit evidence had disappeared.

9. Defendant did provide such information where it found it convenient to do so. For example, when plaintiff presented evidence that 3.5 million copies of the September 1976 issue

were sold, Hustler managed to obtain duplicate sales records from its distributors to prove a smaller amount. Hustler does not explain why other such records could not be produced from its suppliers; it does not even claim that it tried to do so.

10. As then Circuit Judge Burger stated more than a quarter-century ago, one who undertakes to violate the copyright laws places himself in the position of a constructive trustee of the profits resulting therefrom. If the trustee fails in his duty to keep accurate records, "all the inconvenience of the confusion" should be "thrown upon the party who produces it." *Shapiro, Bernstein,* 265 F.2d at 271 (quoting *Hart v. Ten Eyck,* 2 Johns. Ch. 62, 108 (N.Y.1816) (Chancellor Kent)).

relative number of photographs and pages involved has little bearing on the importance of the infringing feature or the profits it generated. *See Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651 (2d Cir.1978). The district court found that the infringing photographs "were the highlight of the September, 1976 issue and a prominent part of Best of Hustler # 2." Damages Op., 620 F.Supp. at 801. We see no basis in the record for second-guessing the district court on this fact-bound inquiry.

### CONCLUSION

We reverse in No. 85–5889 (Blackman's appeal) and affirm in No. 85–5849 (Hustler's appeal). We remand for recomputation of damages and entry of judgment for Blackman in accordance with this opinion.