**STENOGRAPH L.L.C., Appellee,**

**v.**

**BOSSARD ASSOCIATES, INCORPORATED, et al., Appellants.**

**No. 97–7049.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 16, 1998.

Decided June 2, 1998.

John E. Drury argued the cause and filed the briefs for appellants.

William H. Crispin, argued the cause for appellee, with whom Dean R. Brenner was on the brief.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

EDWARDS, Chief Judge:

Bossard Associates, Inc. and the estate of Dennis K. Bossard (collectively "Bossard" or "appellants") appeal from the judgment of the District Court in favor of plaintiff Stenograph, L.L.C., on claims that Bossard infringed Stenograph's copyright for computer software and misappropriated its trade secrets. Appellants' primary contention before this court is that Stenograph failed to present evidence of "copying" sufficient to support an infringement action under the Copyright Act of 1976 (the "Act") (codified as amended at 17 U.S.C. § 101 *et seq.*). Because appellants correctly concede that copying can be proven through evidence that the software was installed on a computer and then used for its principal purposes, we affirm the District Court.

## I. BACKGROUND

Stenograph, a Delaware corporation with its principal offices in Illinois, provides goods and services to the court reporting industry. Stenograph sells several different versions of Computer–Aided Transcription software, which enables court reporters to convert their stenographic notes into English text. In order to protect against the unauthorized use of such software, which is copyrighted, the company has developed "software protect devices" or "keys." When a court reporter uses Premier Power software—the type of transcription software at issue in this appeal—to convert stenographic notes into text, the reporter must put a computer disk containing the notes into a computer that has both the software and a key plugged into the parallel port of the computer. Premier Power will not work on a computer unless a key simultaneously is plugged into the computer.

Stenograph requires that its customers enter into license agreements for both the Transcription software and the keys. The company's standard licensing agreement re-

stricts the use of the licensed materials to a single computer. The license forbids the customer from transferring the Transcription software, the key, or the accompanying documentation to any third party, without the prior written consent of Stenograph. *See* Exhibit ("Ex.") 5, at 19–20.

Stenograph filed its initial complaint on January 20, 1995, in the United States District Court for the District of Columbia, and its First Amended Complaint on May 22, 1995, against, as pertinent to this appeal, Bossard Associates and Dennis K. Bossard (collectively "defendants"). *See* Ex. 1. Bossard Associates is a court reporting and litigation support service located in Washington, D.C. Before his death in August 1997, Mr. Bossard owned all of the stock of Bossard Associates and served as the company's president and treasurer. Stenograph sought compensatory and punitive damages and an injunction for copyright infringement and state law claims of trade secret misappropriation and conversion. These claims arose from allegations that, from April 1992 through November 1994, Mr. Bossard illicitly purchased Stenograph's Premier Power software and eleven keys from one of Stenograph's sales representatives, John Baker, with checks made payable to Baker personally, at a substantial discount from Stenograph's normal retail price.

A jury trial commenced on November 20, 1996. Stenograph presented evidence that Mr. Bossard obtained the keys and software from Baker during the alleged time periods. *See* Trial Tr. (11/21/96) at Appendix ("App.") 164–66, 200; *id.* (11/22/96) at App. 228–36. Stenograph also presented evidence that defendants used the software and one or more of the keys obtained from Baker, gave four keys to independent contractors for them to use (at least partly for Bossard-related jobs), and resold two other keys, all notwithstanding Mr. Bossard's knowledge that Stenograph required users of its software to enter into licensing agreements. *See id.* (11/22/96) at App. 222–26; *id.* (11/25/96) at App. 440–46. Baker testified that Stenograph fired him on November 4, 1994, after he admitted that he sold Premier Power software and keys to Mr. Bossard for his own personal benefit.

*See id.* (11/21/96) at App. 164–66; Ex. 6, at 1. Stenograph did not seek damages for any time after 1995, because in 1996 Christopher Bossard, the son of Mr. Bossard, obtained a Premier Power key from another court reporter and paid Stenograph for a license transfer. *See id.* (11/22/96) at 227–28; Br. of Appellee at 16.

At trial, Mr. Bossard defended largely on the theory that he did not know either that the products obtained from Baker belonged to Stenograph, or that Baker lacked authority to make the sales in question. Baker had had a fifteen year sales relationship with defendants, during which time Baker legitimately sold other Stenograph goods to Bossard Associates. *See* Trial Tr. (11/21/96) at App. 163, 173–74; Br. of Appellee at 11. With respect to the eleven keys, Mr. Bossard testified that Baker told him that Baker was merely serving as a "broker" for third parties who wished to get rid of the products. *See* Trial Tr. (11/21/96) at App. 212. It is undisputed, however, that after Baker was fired in November 1994, Stenograph asked defendants to either pay for or return the Premier Power keys, thereby putting defendants on explicit notice of the illicit nature of the transactions involving the keys. *See* Trial Tr. (11/21/96) at App. 112; Br. of Appellee at 14.

The District Court denied Bossard's motion for judgment as a matter of law made at the conclusion of Stenograph's case and renewed at the end of trial. *See id.* (11/22/96) at App. 282; *id.* (11/26/96) at App. 539–40. On December 2, 1996, the jury returned a verdict for Stenograph on all counts. The jury awarded damages in the amount of $1,500,000 for copyright infringement; compensatory damages of $710,000 and punitive damages of $750,000 for trade secret misappropriation; and compensatory damages of $44,000 and punitive damages of $178,000 for conversion. *See Stenograph Corp. v. Bossard Assocs.*, Civ. No. 95–0141(NHJ) (D.D.C. filed Feb. 12, 1997) ("*Order*"), *reprinted at* Ex. 3. The District Court subsequently denied defendants' motion for a new trial or, alternatively, to amend the judgment and to stay the enforcement of the judgment. *See id.* The Court also entered a separate judg-

ment as a matter of law in favor of Stenograph on other claims alleged in the lawsuit. *See id.* The District Court then entered a judgment on the jury verdict and awarded Stenograph monetary relief in the total amount of $3,198,016.17 against Mr. Bossard and Bossard Associates. *See* Ex. 4.

This appeal followed. Because of Mr. Bossard's death, the estate of Mr. Bossard and Bossard Associates are now the appellants in this proceeding.

## II. DISCUSSION

### A. *Copyright Infringement*

■ Most of Bossard's numerous challenges to the District Court's judgment are plainly meritless and thus do not warrant treatment in this opinion. We do, however, address appellants' contention that the District Court erred in presenting Stenograph's copyright infringement claim to the jury, on the ground that Stenograph failed to present sufficient evidence of impermissible "copying" of Premier Power software by Bossard. In reviewing the denial of a judgment as a matter of law, "the standard we apply is the same as that applied by a district court considering the motion in the first instance. Viewing the evidence in the light most favorable to the non-moving party, we must ask ourselves whether any reasonable jury could find in its favor." *Harbor Ins. Co. v. Schnabel Foundation Co.,* 946 F.2d 930, 935 (D.C.Cir.1991); *see also Smith v. Washington Sheraton Corp.,* 135 F.3d 779, 782 (D.C.Cir.1998); *Scott v. District of Columbia,* 101 F.3d 748, 752 (D.C.Cir.1996). This entails an examination of "all uncontradicted evidence offered by the moving party, as well as all evidence introduced by the non-moving party." *Harbor Ins.,* 946 F.2d at 935.

■ A plaintiff seeking to establish copyright infringement must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Fonar Corp. v. Domenick,* 105 F.3d 99, 104 (2d Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997). The copying must be beyond the scope of a license possessed by the defendant. *See MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 517 (9th Cir.1993). In the instant case, the first element is not in dispute, because Stenograph's certificates of registration for Premier Power, *see* Ex. 5, at 9–12, constitute *prima facie* evidence of the validity of the copyright of the software, and Bossard makes no argument that such certificates were improvidently issued. *See* 17 U.S.C. § 410(c); *Fonar,* 105 F.3d at 104 ("possession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable" (internal quotation omitted)). As to the second element, appellants argue that Stenograph never demonstrated that Bossard copied the protected elements of Premier Power—*i.e.,* the original parts of the software for which Stenograph validly held copyright protection.

■ Case law supports the general proposition that unoriginal portions of a software program can be copied without resulting in copyright infringement. *See Lotus Develop. Corp. v. Borland Int'l,* 49 F.3d 807, 815 (1st Cir.1995) (holding copying of uncopyrightable subject matter of software not copyright infringement), *aff'd by an equally divided court,* 516 U.S. 233, 116 S.Ct. 804, 133 L.Ed.2d 610 (1996); *Gates Rubber Co. v. Bando Chemical Indus., Ltd.,* 9 F.3d 823, 832 (10th Cir.1993) (copyright plaintiff had to show that "those elements of the program that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable"); *see generally Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992) ("[T]hat a whole work is copyrighted does not mean that every element of it is copyrighted; copyright protection extends only to those components of the work that are original to the creator."). Drawing on these principles, appellants posit that Stenograph failed to meet its evidentiary burden on the copying issue, because Stenograph did not show that use of Premier Power in tandem with the keys resulted in the copying of the protected elements of the software to a Bossard computer's random access memory ("RAM"). In support of this

point, appellants contend that Stenograph did not present an expert witness who could testify competently on the manner in which Premier Power software worked inside Bossard's computers.

■ Appellants' argument on copying—particularly their attention to the issue of whether protected elements of Premier Power were copied to random access memory—is a nonstarter. Appellants conceded at oral argument, and this court agrees, that if someone loads validly copyrighted software onto his or her own computer without the owner's permission, and then uses the software for the principal purposes for which it was designed, there can be no real doubt that the protected elements of the software have been copied and the copyright infringed. In other words, the only real question in this case is whether the jury had sufficient evidence to find that Bossard installed and used Stenograph's software for its principal purposes.

As an analytical matter, there are two different ways to describe the impermissible "copying" that occurred in this case. First, it can be concluded, quite simply, that copying occurred when appellants installed and used the software for the principal purposes for which it was intended. Alternatively, following a line of analysis adopted by a number of courts, it can be concluded that appellants copied the software when it was booted up for use for its principal purposes, and thereby loaded into RAM. These two theories may be two ways of saying the same thing; but in either of them, the jury's verdict against appellants was fully justified.

1. *Installation*

■ The language of the Copyright Act, case law, and common sense support the proposition that the installation of software onto a computer results in "copying" within the meaning of the Copyright Act. *See* 17 U.S.C. § 101 (defining "copies" as "material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device"); 2 MELVILLE B. NIMMER & DAVID NIM-

MER, NIMMER ON COPYRIGHT § 8.08[A][1], at 8–113 (1997) ("NIMMER") (the Act's language "makes clear that the input of a work into a computer results in the making of a copy"); *cf. Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 260 (5th Cir.1988) ("the act of loading a program from a medium of storage into a computer's memory creates a copy of the program"). Appellant does not argue that the installation of software onto a single computer workstation differs from the installation of software onto an office network, for purposes of infringement analysis. Moreover, if an entire program is thus copied, certainly the "protectible elements" of the program are also copied. *See Fonar*, 105 F.3d at 106 (summary judgment for defendants inappropriate assuming they made "complete copies" of plaintiff's software); *Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1335 (9th Cir.1995) (where defendant's conduct "involved copying entire programs, there is no doubt that protected elements of the software were copied").

■ The question in the instant case, then, is how installation could be proven. Here, Mr. Bossard admitted outright at trial that Premier Power was installed on his company's computer network. *See* Trial Tr. (11/22/96) at App. 232–33. During Mr. Bossard's testimony, after a series of exchanges between Stenograph's counsel and Mr. Bossard on the issue of how Bossard originally obtained the software and keys, Stenograph's counsel elicited the following testimony:

Q You have your Premier Power software installed on the network. Correct?

A I'll agree to that, okay?

*Id.* According to appellants, Mr. Bossard's statement only established that Premier Power was installed on the company's network *as of the time of trial—i.e.,* November 1996. Thus, they argue, Mr. Bossard's statement does not constitute persuasive evidence of infringement, because earlier in 1996 Christopher Bossard had obtained a license for the software. *See* Reply Br. at 7–8.

Appellants' self-serving reading of the record is not enough to overcome the jury ver-

dict in this case. First, Mr. Bossard never claimed that his company's installation of Premier Power occurred only after a license for its use had been obtained. Second, and more important, Mr. Bossard essentially conceded all of the points in issue when he testified that Bossard had possessed and *used* Premier Power software since 1993.

Bossard does not dispute that a court reporter who seeks to use the software first must insert a disk containing stenographic notes "into a computer *on which the Premier Power resides.*" Br. of Appellee at 7 (emphasis added); *also see* Trial Tr. (11/22/96) at App. 322. This is hardly surprising, because it is consistent with the way in which software is typically used. *See* 2 NIMMER, § 8.08[B][1], at 8–118 ("[I]nstalling programs from floppy disks onto the hard drive (instead of booting them from the floppy drive every time they are desired) has become almost universal. . . ."). Indeed, even if it were *possible* to use Premier Power without prior installation onto a computer, Bossard makes absolutely no suggestion that it did so in this case. Furthermore, Bossard makes no claim that it used only computers located in other offices, on which Premier Power already was installed pursuant to a license from Stenograph. In these circumstances, where installation of the software is a prerequisite to its use, Stenograph could show that Bossard installed and therefore copied the software by demonstrating that Bossard used the software and keys for their principal purposes during the relevant time periods.

There is substantial evidence in the record showing that Bossard used Premier Power for the principal purposes for which it was designed—*i.e.*, to convert stenographic notes into English text and produce transcripts for sale. First, Mr. Bossard testified that his company initially obtained Premier Power in 1993, when Bossard also obtained its first software protect key from Baker. *See* Trial

Tr. (11/22/96) at App. 234–35. In addition, Stenograph elicited testimony from Mr. Bossard that numbered keys were kept in Bossard's offices. *See id.* at 229. On those occasions when Bossard would purchase a key from Baker, the key would "ultimately go to [Bossard's] computer room" if Baker did not first take it there himself. *Id.* (11/25/96) at 381–82. At one point in his testimony Mr. Bossard admitted that software had been used from "whenever [the company] got the first Premier Power key from John Baker." *Id.* (11/22/96) at 234.[1] Mr. Bossard separately admitted that a Bossard Associate employee used the software and a key in the company's computer room to process files and cause transcripts to be printed for sale to customers. *See id.* (11/25/96) at 445–46. From these statements, the jury easily could conclude that Bossard—through both its regular employees and independent contractors—used the software in tandem with the keys prior to 1996.

In sum, the evidence supports the finding that Bossard impermissibly copied Premier Power by installing and using the software for its principal purposes during the time in question.

### 2. *Loading Into RAM*

■ It is also evident that copying of Premier Power occurred through the loading of the software into the random access memories of Bossard's computers while the software was in use. Courts that have addressed the issue agree that the loading of software from some permanent storage medium, such as a floppy disk or a computer's hard drive, to the computer's random access memory ("RAM") when the software is "booted up" causes a copy to be made. *See MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir.1993) (defendant's "loading of copyrighted software into RAM creates a 'copy' of that software in violation

1. Later in his testimony, when confronted with plaintiffs' exhibits demonstrating that Bossard obtained its first key from Baker in 1993, Mr. Bossard appeared to backtrack from his earlier statement that the company had been using Premier Power software from that time. According to Mr. Bossard's later statement, Bossard Associ-

ates only "possibly" had been using the software since 1993, because the first key obtained from Baker "could be the key that blew up on us." Trial Tr. (11/22/96) at 235. Of course, it would have been reasonable for the jury, in determining Mr. Bossard's credibility as a witness, to resolve contradictions in his testimony against him.

of the Copyright Act"); *Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1335 (9th Cir.1995); *Advanced Computer Servs. v. MAI Systems Corp.*, 845 F.Supp. 356, 363 (E.D.Va.1994); 2 NIMMER § 8.08[A][1], at 8–113 to 8–114 (describing trend recognizing that reproduction of program in RAM constitutes "copy"); *see generally,* Jane C. Ginsburg, *Putting Cars on the "Information Superhighway": Authors, Exploiters, and Copyright in Cyberspace,* 95 COLUM. L.REV. 1466, 1476 (1995) ("Copies of a work are made . . . when a temporary copy is received into the memory of [a] computer."). Appellants erroneously argue in their brief that the holding in *MAI Systems* has no bearing on the instant case because it only addressed the issue of whether a computer program in RAM is "fixed" under the Act, independent of the issue of whether the RAM reproduction constitutes a "copy." *See* Br. of Appellant at 9. On the contrary, *MAI Systems* held that a RAM reproduction was a copy precisely *because* it was fixed under the Act. *See* 17 U.S.C. § 101 (defining the terms "copies" and "fixed"); *MAI Systems,* 991 F.2d at 518; *Advanced Computer,* 845 F.Supp. at 362–64 (rejecting contention that program in RAM was not "fixed").

We do not read appellants' arguments to seriously challenge the holding in *MAI Systems* and other cases that a RAM reproduction constitutes a copy, although this holding has drawn some criticism. *See, e.g.,* Jessica Litman, *The Exclusive Right to Read,* 13 CARDOZO ARTS & ENT. L.J. 29, 40 (1994) (protesting result in which all acts of reading or viewing a digitalized work with the use of computer involves "actionable reproduction"); *see generally,* Ginsburg, 95 COLUM. L.REV. at 1476 n.39 (citing critics). Rather, appellants complain that Stenograph failed to prove that the protected elements of Premier Power were reproduced into RAM in the first instance. But this argument is specious, because, at oral argument, appellants conceded that the protected elements of Premier Power were copied if in fact the software was *used* for the principal purposes for which it was designed. As described above, there was ample evidence from which the jury could conclude that Bossard used Premier Power to convert stenographic notes into English text and produce transcripts for sale, without a license from Stenograph. Equally important, appellants do not argue that they had any reason to use Premier Power other than for the software's principal purposes. Thus, evidence of Bossard's use of Premier Power served as sufficient evidence that protected elements were copied, insofar these elements were reproduced into RAM. On the current record, it is simply irrelevant that Stenograph never presented an expert witness who could testify that specific parts of Premier Power were reproduced into RAM when the software was used by Bossard.

Contrary to appellants' contentions, this conclusion is not in tension with *Fonar Corp. v. Domenick,* 105 F.3d 99 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997). In *Fonar,* the plaintiff sued for copyright infringement on the theory that the defendant copied plaintiff's software when the defendant booted up the software for use. Although the district court granted summary judgment to the defendant primarily on the ground that plaintiff failed to establish a valid copyright, the court of appeals reversed and stated, in pertinent part, "at trial Fonar will undoubtedly have to break down its software into its constituent parts in order to allow the examination of these parts" for protected elements. *Id.* at 104. That a copyright plaintiff should have to demonstrate a software's protected elements for purposes of establishing a valid copyright does not lend support to Bossard's contention that the same plaintiff must specifically show reproduction of these elements into RAM during defendant's unauthorized use of the software, for purposes of showing "copying." Indeed, the *Fonar* court assumed, in reversing the district court, that loading a program into RAM resulted in "wholesale copying," *id.* at 103, and that therefore whatever protected elements that were contained in the software were copied during the software's use. *See id.* at 106. Thus, *Fonar* supports, rather than undermines, our position that impermissible copying occurs when a validly copyrighted program is used for its principal purposes.

Our holding in this case does not address a situation in which it might be claimed that no

copying occurred through prior installation. *See, e.g., Fonar,* 105 F.3d at 101–02 (infringement action brought against company that uses programs residing on third parties' computer systems); *MAI Systems,* 991 F.2d at 517 (same). Nor does this case involve a claim that defendant used only the unoriginal—or unprotected—portions of a program. In other words, a defendant might claim that he or she used only those elements of a software program that are common to other programs and, therefore, by themselves, not copyrightable. In such a case, it might be argued that such limited use of the software by the defendant does not support an action for infringement, because the limited use did not cause any of the software's protected elements to be reproduced into RAM. We leave these questions for another day.

## B. *Damages*

The total damages awarded by the District Court to Stenograph reflected, in part, the jury's awards of $1,500,000 for copyright infringement and "$710,000 for actual losses and unjust enrichment" on the claim of trade secret misappropriation. *Order,* at 1. Appellants' arguments attacking these and other aspects of the total damages award are without merit.

██ The amount of $1,500,000 presumably represents Bossard Associates' total revenues ($1,700,000) for the time period under dispute (December 1994 through December 1995), minus an estimation of expenses related to the use of Premier Power software (approximately $200,000). Bossard's challenge to the $1,500,000 figure is meritless because, after Stenograph introduced the statement containing Bossard Associates' gross revenues for the relevant time period, *see* Ex. 5, at 25–27; Trial Tr. (11/22/96) at App. 236–37, the burden shifted to Bossard under 17 U.S.C. § 504(b) to "prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* Because appellants clearly failed to carry their burden under § 504(b), we have no reason to disturb the copyright infringement award of $1,500,000.

*See* § 504(b), Notes of the Committee on the Judiciary on Actual Damages and Profits; *cf. Blackman v. Hustler Magazine, Inc.,* 800 F.2d 1160, 1163 (D.C.Cir.1986) (holding, where defendants failed to meet burden under 1909 Copyright Act, that "the gross figure is left to stand as the profit factor" (internal quotation omitted)).

We are perplexed, however, as to how the jury reached the amount of $710,000 "for actual losses and unjust enrichment" on the trade secret misappropriation claim. The trial judge instructed the jury that "unjust enrichment" was based upon "Defendants' profits from the misappropriation." Trial Tr. (11/27/96) at App. 613. The trial judge further stated that such profits should be determined through a burden-shifting process largely identical to the one it had set forth for the copyright infringement claim. *Id.* To the extent Stenograph was awarded damages based on Bossard Associates' 1995 profits for *both* the misappropriation of trade secrets claim and the copyright claim, it would appear that Stenograph obtained a questionable double remedy. *See Softel v. Dragon Med. & Scientific Communications,* 118 F.3d 955, 969 (2d Cir.1997) (upholding district court's refusal to award damages on trade secret claim because such damages would have been "coextensive with the damages it had already awarded for copyright infringement"), *cert. denied,* —— U.S. ——, 118 S.Ct. 1300, 140 L.Ed.2d 466 (1998). However, Bossard never raised this issue, either at trial or on appeal, so we have no valid basis upon which to disturb the judgment of the District Court.

## III. Conclusion

For the foregoing reasons, the judgment of the District Court is affirmed.