# United States Court of Appeals
## For the First Circuit

---

No. 01-2345

DOUGLAS M. BRUCE,

Plaintiff, Appellant,

v.

WEEKLY WORLD NEWS, INC., et al.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

---

Before

Torruella, Circuit Judge,

Campbell and Cyr, Senior Circuit Judges.

---

Andrew D. Epstein, with whom Barker, Epstein & Loscocco was on brief for appellant.
Andrew Baum, with whom Darby & Darby, P.C. was on brief for appellees.

---

October 30, 2002

---

**CYR, <u>Senior Circuit Judge</u>**. Douglas M. Bruce appeals from a district court judgment which directed the tabloid Weekly World News ("World News") to pay him $20,142.45 in damages and nonduplicative profits due to its acknowledged copyright infringement. Bruce insists that he is entitled to additional damages amounting to between $359,000 and $406,000. With but one exception, the district court judgment is affirmed.

## I

## <u>BACKGROUND</u>

In March 1992, Bruce, a freelance photographer, photographed then-presidential-candidate William S. Clinton as he was shaking hands with an unidentified Secret Service agent. Later, Bruce consigned the photograph to The Picture Group, a photo stock agency. Thereafter, a World News photo editor contacted The Picture Group to obtain a photograph of Clinton while shaking hands. World News intended to alter any such photograph by superimposing, over the image of the person shaking Clinton's hand, its own image of the "Space Alien." The "Space Alien" is a fictional extra-terrestrial creature which World News had been featuring prominently in its political campaign coverage ever since 1990. World News then proceeded to manipulate the Clinton photograph without first obtaining authorization from Bruce. The Picture Group and World News were unable to reach agreement on an appropriate licensing fee.

2

On the cover of its August 11, 1992 issue, World News published the retouched photograph, together with the banner "Alien Backs Clinton!" The Picture Group billed World News for $500, which it shared equally with Bruce pursuant to contract. Thereafter, on each occasion that the retouched photograph appeared in World News, The Picture Group sent World News a bill. Ultimately, Bruce realized a total of $1,775 in licensing fees. The Picture Group ceased its business operations in 1993.

Thereafter, in 1994, Bruce came upon a World News T-shirt advertisement utilizing the August 11, 1992 cover containing his retouched photograph. In due course, Bruce's counsel transmitted a cease-and-desist letter to World News, claiming copyright infringement. World News responded with an offer to pay $500 for a general release of the Bruce copyright. The same retouched photograph later appeared on a different T-shirt featuring World News' June 7, 1994 cover, containing photographs of twelve United States Senators, under the banner "12 U.S. Senators Are Space Aliens!" These T-shirt advertisements subsequently were repeated 188 times in World News, as well as numerous times on the World News Internet site. During this period, World News ordered 5,710 (and sold 1,817) of the "Alien Backs Clinton" T-shirts and ordered 4,767 (and sold 2,207) of the "Senators Are Aliens" T-shirts.

In an article entitled "Alien Endorses Dole," appearing in the May 1996 issue, the World News cover included (1) another

3

photograph of Clinton (not taken by Bruce) holding a copy of the August 11, 1992 issue of World News, together with Bruce's retouched photograph; as well as (2) the cover of the August 11, 1992 issue, among a collage of earlier World News covers. In the May 2000 issue, the retouched photograph appeared both as a small inset on the cover, which prominently featured a photograph of George Bush shaking hands with the Space Alien, and adjacent to the related news story inside. In addition, beginning in July 1995, the August 11, 1992 World News cover, containing Bruce's retouched photograph, appeared 48 times as part of a subscription advertisement placed inside the tabloid.

In June 1998, Bruce commenced the present action against World News for copyright infringement. See 17 U.S.C. § 101 et seq. (1996 & Supp. 2002). Following a bench trial, during which World News acknowledged its infringements, the district court awarded Bruce $20,142.45 in damages, plus interest. Bruce v. Weekly World News, Inc., 150 F. Supp. 2d 313 (D. Mass. 2001).[1] The damages award included nine components:

Actual Damages

| | |
|---|---|
| Editorial use of retouched photo on 5/28/96 | $ 300 |
| Additional editorial uses on 5/28/96 and 5/9/00 | $ 0 |

---

[1]The copyright statute itself delimits the recoverable damages in the instant case to those sustained since June 1, 1995. See 17 U.S.C. § 507(b).

4

```
Uses on two promotional T-shirts    $       800
Uses in T-shirt ads                 $         0
Uses in subscription ads            $         0
Uses on Internet site               $     1,200
_____
Subtotal                            $     2,300
Multiplier for unauthorized use     x         5
_____
Subtotal of actual damages              $ 11,500.00
```

Nonduplicative Profits

```
Sales of T-shirts                   $    8,642.45
Advertising revenues                $         0
Newstand/subscription sales         $         0
-------------------------------------------------
Subtotal of nonduplicative profits      $ 8,642.45
```

Total damages award                     $20,142.45

On appeal, Bruce challenges the amount of the damages award, contending that he is entitled to at least an additional $359,000.

## II

## DISCUSSION

We review de novo the legal determination as to the appropriate standard for calculating damages awarded as a consequence of copyright infringements, but will upset the underlying factual findings only upon a showing of clear error. See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 34 (1st Cir. 2002). A plaintiff who establishes copyright infringement is entitled to recover (1) actual damages, which consist of all income and profits lost as a consequence of the infringement; and (2) any nonduplicative profits earned by the

5

defendant as a consequence of the copyright infringement, see 17 U.S.C. § 504(b) (noting that plaintiff may recover "any profits . . . attributable to the infringement [that] are not taken into account in computing the actual damages"). See Data Gen. Corp. v. Grumman Systs. Support Corp., 36 F.3d 1147, 1170-77 (1st Cir. 1994).

**Actual Damages**

### A. Applicable Legal Standard

At the outset, Bruce asserts that it was reversible error for the district court to announce that the correct legal standard for calculating actual damages is "the profits lost . . . result[ing] . . . [from] the infringement," Bruce, 150 F. Supp. 2d at 316 (emphasis added), rather than the "reasonable fair market licensing fees," since the term "profits lost" more aptly applies to a distinct species of actual copyright damages, not pertinent here, and refers not to the extent to which plaintiff was deprived of defendant's fee, but rather the extent (if any) to which defendant's infringement prevented plaintiff from licensing his work to clients or customers other than the defendant. See Data Gen. Corp., 36 F.3d at 1170-71; Hamil Am., Inc. v. GFI, 193 F.3d 92, 107-08 (2d Cir. 1999); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.02[A] (2001). Yet, assuming arguendo that the district court's prefatory reference to "profits lost" was ill-founded, the error is plainly harmless, see, e.g., Southex

6

Exhibitions, Inc. v. R.I. Builders Ass'n, 279 F.3d 94, 103 (1st Cir. 2002) ("'[S]uch error [is] harmless if it is highly probable that [it] did not affect the outcome of the case.'") (citation omitted), since the body of its opinion makes it unmistakably clear that the court was assessing Bruce's actual damages through reference to the "[licensing] fees" which World News would have had to pay Bruce were it not for the unauthorized use of the photograph.[2]

## B.  **Apportionment of Actual Damages**

Next, Bruce contends that the district court erred by awarding only one half of the $2,200 licensing fees, see supra Section I (chart), in order to reflect Bruce's 1992 contractual agreement to share all fees equally with The Picture Group, the photo stock agency to which Bruce consigned the photograph.  Since The Picture Group went out of business in 1993, Bruce posits that he was entitled to 100% of the fees thereafter, and, accordingly, that World News was unjustly enriched by virtue of the district court's fifty-percent reduction in the $2,200 licensing fees.

Although considerable deference normally must be accorded the findings of fact made by the district court, as well as its balancing of the relevant equitable factors, see Invest Almaz v.

---

[2]For instance, the district court stated:  "I conclude that an inflation adjusted fee of $300 . . . is a fair award . . . [and] that a fee of $500 for the Clinton use and $300 for the Senators use is appropriate."  Bruce, 150 F. Supp. 2d at 321 (emphasis added).

7

<u>Temple-Inland Forest Prods.</u>, 243 F.3d 57, 66 (1st Cir. 2001) (noting that unjust-enrichment rulings normally are reviewed for an abuse of discretion only), in the instant case we conclude that Bruce is entitled to the fifty-percent share of the licensing fee which World News should have paid to The Picture Group in 1992 for its use of the Bruce photo.

Bruce freely contracted away his right to the fifty-percent share, and thus would be "made whole" upon receipt of the fifty-percent discount. The unjust enrichment doctrine, however, requires that the factfinder also consider whether World News, if permitted to retain The Picture Group's share of the licensing fee, would realize an unfair windfall such that justice and equity mandate be disgorged. <u>See</u> <u>id.</u> at 64. As The Picture Group is presently defunct, its $1,100 share would either be retained by World News or remitted to Bruce. As World News is the copyright infringer, Bruce unquestionably is the more deserving recipient. Accordingly, we vacate the district court judgment insofar as it discounted the Bruce share of the licensing fee by fifty percent, and remand with directions to enter judgment for an additional $5,500 in damages in favor of Bruce (<u>viz.</u>, $1,100 times multiplier of 5). <u>See</u> <u>Nowaczyk</u> v. <u>Warden, N.H. State Prison</u>, 299 F.3d 69, 83 (1st Cir. 2002) (noting that an "'[a]buse [of discretion may result] . . . when a material factor deserving significant weight is ignored") (citation omitted).

## C. The Limitation of the Licensing Fees to the Original Unauthorized Use by World News

Bruce next contends that the district court incorrectly ruled that he was entitled to licensing fees solely for World News' first unauthorized editorial uses of his photograph in August 1992, but not for each ensuing unauthorized use, such as its reprinting of prior World News covers and its uses in T-shirt and subscription advertisements. Bruce conjectures instead that he may have been able to negotiate a more lucrative per-use licensing contract with World News. See Iowa State Univ. Res. Found., Inc. v. Am. Broad. Cos., 475 F. Supp. 78, 83 (S.D.N.Y. 1979) ("[The infringer] cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law."), aff'd, 621 F.2d 57 (2d Cir. 1980).

The present contention fails for several reasons. First, under the copyright statute Bruce may recover actual damages only. See Data Gen. Corp., 36 F.3d at 1170-77. Accordingly, the sole issue before the district court was the amount of the reasonable licensing fee Bruce likely would have received from World News for each of the above-listed uses had the parties reached a fee agreement, which presented what is first and foremost a question of fact, rather than law. Thus, under the applicable standard of review, the challenged determination constituted "clear error only if, after reviewing the entire trial record, 'we are firmly

9

<u>convinced</u> that a mistake has been made.'" <u>Southex Exhibitions</u>, 279 F.3d at 98-99 (citation omitted; emphasis added). We perceive no such serious error.

First and foremost, in the present case, proof of industry practice inarguably is crucial to the estimation of actual damages.[3] The record on appeal is replete with expert testimony that, given the prevailing industry practice, there was no realistic prospect whatsoever that Bruce could negotiate a per-use licensing fee with World News. Rather, the record discloses ample evidence that such a practice is rarely, if ever, indulged.

All Bruce managed to muster in reply was the testimony of his own expert, Sheri Blaney, which included the conclusory and unsupported assertion that the licensing fee award "could be whatever we feel is fair." On the other hand, Darryl Jacobson, the expert witness presented by World News, repeatedly and consistently testified that, under the prevailing industry practice, Bruce almost surely would not have been able to negotiate with World News for anything other than a single, lump-sum, up-front licensing fee,

---

[3]<u>See</u>, <u>e.g.</u>, <u>De Graffenried</u> v. <u>United States</u>, 25 Cl. Ct. 209, 220-21 (1992) (relying, in patent-infringement case, on evidence that industry practice was to negotiate a single up-front royalty, rather than a per-use royalty); <u>see</u> <u>also</u> <u>BellSouth Adver. & Publ'g Corp.</u> v. <u>Donnelley Info. Publ'g, Inc.</u>, 999 F.2d 1436, 1444 (11th Cir. 1993); <u>Endress & Hauser, Inc.</u> v. <u>Hawk Measurement Systs. Pty. Ltd.</u>, 892 F. Supp. 1123, 1131 (S.D. Ind. 1995), <u>aff'd</u>, 122 F.3d 1040 (Fed. Cir. 1997); <u>Playboy Enters., Inc.</u> v. <u>Dumas</u>, 831 F. Supp. 295, 305 (S.D.N.Y. 1993); <u>cf.</u> <u>Mills Music, Inc.</u> v. <u>Snyder</u>, 469 U.S. 153, 170-71 (1985) (assuming that Congress intended to incorporate prevailing industry practices when it enacted the copyright act).

as distinguished from a per-use fee.  As but one glaring example of the weaknesses in the Bruce proffer, Ms. Blaney was forced to concede that, in her experience, Bruce could not have recovered a separate fee each time the retouched photograph appeared in a T-shirt advertisement.  Accordingly, the district court, <u>qua</u> factfinder, was entitled to make the crucial credibility determination as between the competing expert witnesses.  <u>See</u>, <u>e.g.</u>, <u>Den Norske Bank AS</u> v. <u>First Nat'l Bank of Boston</u>, 75 F.3d 49, 57 (1st Cir. 1996).[4]

### D.    <u>Fees for T-Shirts Produced for World News But Not Sold</u>

Further, Bruce argues that, in addition to the $800 in licensing fees awarded to him for World News' use of his retouched photograph on the two T-shirts, and the $8,642 in World News' revenues realized from these T-shirt sales, he and his expert, Ms. Blaney, testified that Bruce likely would have been able to negotiate for a royalty of somewhere between $1 and $3 on each T-shirt <u>produced</u> for World News, rather than merely those which World News actually sold.  He contends that some T-shirts were produced, but never sold; for example, that World News allegedly gave some T-

---

[4]Appellant tries to rely on <u>Iowa State</u> which is wholly inapposite.  That decision involved a different question under the Copyright Act of 1909: even where plaintiff had failed to prove actual damages, the court nonetheless was required by statute to award "in lieu" minimum damages for <u>each</u> infringement.  Thus, unlike the instant case, there the court needed to determine how many discrete infringements were committed by the defendants.  <u>See</u> <u>Iowa State Univ. Res. Found.</u>, 475 F. Supp. at 81.

11

shirts away to customers purely for promotional purposes.

The present contention fails due to the fact that (i) Bruce provided no conclusive evidence that there has ever been any such continuing-royalty contract in the industry, and (ii) Ms. Blaney, his own expert witness, conceded that, in twenty-five years of experience, she had yet to encounter such a contractual arrangement. Similarly, the expert witness presented by World News testified that there was no prevailing industry practice for recovering per-use royalties for promotional items, such as the two T-shirts here involved, which have a relatively short lifespan and little enduring commercial viability. Accordingly, the district court decision declining the Bruce request for royalties did not constitute clear error. See Den Norske Bank AS, 75 F.3d at 57.

**Nonduplicative Damages**

### A.    World News' Advertising Profits and Sales Revenues

Bruce next contends that the district court erred in refusing to award him a share of the net profits which World News realized from its advertising revenues and newstand or subscription sales attributable to its uses of the retouched photograph. Bruce asserts that due to World News' failure to produce evidence of its gross revenues during discovery, he was forced to estimate those revenues, based on his own ad hoc formula. See Blackman v. Hustler Magazine, Inc., 800 F.2d 1160, 1164 (D.C. Cir. 1986) (fashioning similar remedy where copyright defendant frustrated plaintiff's

12

access to evidence relating to profits). This contention is baseless.

In order to recover profits, Bruce need only have established World News' gross revenues, at which point the burden would have shifted to World News to establish that all or part of the gross revenues were attributable to factors other than the copyrighted work. See 17 U.S.C. § 504(b); Data Gen. Corp., 36 F.3d at 1173. Although a copyright plaintiff need not prove nonduplicative profits with mathematical certainty, neither can his proffer be "unduly speculative." Id. at 1171 (citing Bus. Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 404 (2d Cir. 1989) and Stevens Linen Assocs., Inc. v. Mastercraft Corp., 656 F.2d 11, 14 (2d Cir. 1981)).

Bruce made no earnest attempt during discovery to obtain all the available evidence relating to World News' gross revenues. Instead, he merely requested that World News produce documents relating to the profits "derived in any way or realized from the use of Plaintiff's Photograph." Although the request was arguably ambiguous, World News unambiguously responded that it had earned no revenues from its use of the Bruce photograph, except from the T-shirt sales. Bruce neither objected to the World News response to his interrogatories, nor moved to compel discovery of all World News documents relating to gross revenues realized during the infringement period. Thus, rather than diligently pursuing the

13

most dependable and nonspeculative evidence as to World News' gross revenues, Bruce deliberately elected to concoct a more lucrative calculation, based upon questionable estimates and samplings,[5] rather than internal documents in the possession of World News. See, e.g., Worster v. U.S. Postal Serv., No. 99-00726, 2002 WL 242348, at *1 (4th Cir. Feb. 20, 2002) (holding that party's failure to file motion to compel production of documents waives argument on appeal); cf. Blackman, 800 F.2d at 1164 n.8 (noting that plaintiff had made specific discovery request for all revenue data).[6]

## B. **Apportionment of Profits**

Finally, Bruce maintains that the district court erred in apportioning (on a 50-50 basis) between himself and World News, the profits generated from the T-shirt sales, on the ground that Bruce's original photograph was responsible, at most, for one half the effectiveness of the retouched photograph. He contends that the repetitive use of the retouched photograph by World News turned it into a sort of icon, which resulted in a valuation which exceeded the sum of its two components, see Bus. Trends Analysts,

---

[5] Nor did Bruce adduce expert evidence that his calculus was reasonable or fairly representative. Instead, for example, in estimating the World News newstand sales, Bruce simply assumed that World News took in the full cover charge on each sale, even though it is obvious that others in the distribution chain would have received a share.

[6] Not surprisingly, Bruce submitted no reply brief on appeal in response to the waiver argument made by World News.

14

Inc. v. Freedonia Group. Inc., 887 F.2d 399, 407 (2d Cir. 1989) (noting that apportionment may be "impossible" where two concepts have become too intertwined), or made apportionment so speculative that the benefit of any doubt should redound to plaintiff's favor, see Walker v. Forbes, Inc., 28 F.3d 409, 414 (4th Cir. 1994).

We review the issue of apportionment under the copyright statute for abuse of discretion only. See Data Gen. Corp., 36 F.3d at 1176 (noting that apportionment of profits requires courts to balance various equitable factors, in a "delicate exercise informed by considerations of fairness and public policy"). The district court was well within its discretion in its conclusion that Bruce's original photograph (of Clinton and the Secret Service agent) was so routine and generic that it had very little market appeal, whereas the bizarre nature of the retouched photograph gave it exponentially greater appeal. The district court aptly cited case law where generic copyrighted material was later enhanced by so-called "star power," such as Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 398 (1940), and where plaintiff was awarded far less than a 50% share. Bruce, 150 F. Supp. 2d at 318. In light of these precedents, the district court not only did not abuse its discretion, it arguably was generous in apportioning as much as 50% of the profits to Bruce.

The judgment is hereby vacated in part, and the case remanded to the district court, with directions to modify the final

15

order and judgment so as to increase appellant's damages award by $5,500, for a total award of $25,642.45. In all other respects, the district court judgment is affirmed. Each party shall bear its own costs. SO ORDERED.